IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


JOHN LESTER SALAZAR,

        Petitioner,

v.                                                          CIV 03-1010 JH/KBM

TIM LeMASTER, Warden, et al., Warden,

        Respondent.


# **PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

        The matter before me is John Lester Salazar's "Second Petition" seeking habeas relief under 28 U.S.C. § 2254.  The Tenth Circuit determined that the pleading does not constitute a "successive petition" and remanded the matter to this Court for further proceedings.

        Because Salazar filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a one-year statute of limitations applies.  *E.g., Michael Williams v. Taylor,* 529 U.S. 420, 429 (2000); *Lindh v. Murphy,* 521 U.S. 320, 326-327 (1997).  The limitations issue can be resolved on the record and, therefore, an evidentiary hearing is unnecessary.  *E.g., Trice v. Ward,* 196 F.3d1151, 1159 (10th Cir. 1999), *cert. denied,* 531 U.S. 835 (2000); Rule 8(a), Rules Governing Habeas Corpus Under Section 2254.  I recommend that the petition be dismissed as untimely under § 2244.

## **I.  Incorporation of Record Proper**
## **In *Salazar v. Williams,* CIV 01-1206 WJ/LFG**

        The first federal habeas action Salazar pursued was dismissed without prejudice because

his petition was "mixed," but some of the claims were unexhausted. *See Salazar v. Williams,* CIV 01-1206 WJ/LFG (*Docs. 32, 39, 40*). There, Respondents filed the "record proper," which included the state court record as well as transcripts of the probation violation, plea and sentencing hearings. *See id.*

In the case before me, I was only able to ascertain a complete picture of the state court proceedings by consulting the record proper from the first federal proceeding and the record proper here. Although the instant action does contain a number of exhibits from the first action, in order to be complete, I take judicial notice[1] of the contents of the prior suit. I cite to materials from the first action using the designation "*Salazar I,*" and I cite to materials in the matter before me by document and exhibit number.

## II. Procedural Background

### A. *Rule 5-801 Motion To Reconsider Sentence Following Sentencing*

After accepting Salazar's guilty plea, which was memorialized in a written plea agreement that contained a waiver of direct appeal, the state court announced Salazar's sentence at a hearing

---

[1] *See, e.g., Anderson v. Cramlet.* 789 F.2d 840, 845 (10th Cir. 1986) ("'Judicial notice is particularly applicable to the court's own records of prior litigation closely related to the case before it,'" quoting *St. Louis Baptist Temple, Inc. v. FDIC,* 605 F.2d 1169, 1172 (10th Cir. 1979)); *United States v. Estep,* 760 F.2d 1060 (10th Cir. 1985) ("We recognized in *Mansell v. Carroll,* 379 F.2d 682 (10th Cir.), that a judge looks to other court records in order to 'pierce the formalities of all of the transactions in question.' Although a court is not bound to notice other legal proceedings '[i]t is often done for a part of the record in the same proceeding or in a ***prior*** stage of the same controversy.' IX Wigmore on Evidence § 2579 (Chadbourn rev. 1981) (emphasis in original)."); *Stack v. McCotter,* 79 Fed. Appx. 383, 391 (10th Cir. 2003) ("Acting under our power to take judicial notice of related proceedings, *see St. Louis Baptist Temple,* 605 F.2d at 1172, we have obtained and reviewed a copy of the state district court docket sheet in the mandamus proceeding.").

held on July 21, 1999,[2] and entered a final judgment and sentence on August 3, 1999. The judge sentenced him to a total of sixteen years imprisonment, with four years suspended during which Salazar would be placed on probation  *See Salazar I* (Record Proper at 154, 167-70); *id.* (July 21, 1999 Transcript of Sentencing Proceedings at 90) (hereinafter "*Sentencing Transcript*").

Between the hearing and entry of judgment, however, Salazar's attorney filed a "Motion To Reconsider Sentence" on August 2, 1999, citing N.M. Stat. Ann. § 39-1-1 as the basis for jurisdiction. *Salazar I* (Record Proper at 166a). In general, that statute gives a state court jurisdiction for thirty days in which to rule on motions filed within that period and, if the court does not rule on the motion within thirty days of filing, the motion is deemed denied.[3]

Salazar's attorney asked the judge to hold a hearing and reconsider the sentence previously imposed because counsel had additional information to present. *Id.* (Record Proper at 166a). In a letter stating that she "reviewed the file and pre-sentence report," the judge declined to hold a hearing and denied the motion. *See id.* (Record Proper at 171-72). The judge's letter

---

[2] Under New Mexico law, an "oral pronouncement is not a final judgment and is subject to change until reduced to writing." *State v. Rushing,* 103 N.M. 333, 334, 706 P.2d 875, 876 (N.M. App.) (citing *State v. Diaz,* 100 N.M. 524, 673 P.2d 501 (1983), *cert. denied,* 469 U.S. 1016 (1984)), *cert. denied*, 103 N.M. 344, 707 P.2d 552 (1985).

[3]  Final judgments and decrees, entered by district courts in all cases . . .
shall remain under the control of such courts for a period of thirty days
after the entry thereof, and for such further time as may be necessary to
enable the court to pass upon and dispose of any such motion which may
have been filed within such period, directed against such judgment;
provided, that if the court shall fail to rule upon such motion within thirty
days after the filing thereof, such failure to rule shall be deemed a denial
thereof; and, provided further, that the provisions of this section shall not
be construed to amend, change, alter or repeal the provisions of Sections
4227 or 4230, Code 1915 [which the Compiler's notes indicate are
statutes superceded by New Mexico Civil Rule 60].

N.M. Stat. Ann. § 39-1-1 (Michie 1978).

and order were filed on August 6, 1999, and she entered an amended final judgment and sentence on August 11, 1999. The amended document was identical in all respects to the original judgment, except that the amendment specifically provided that Petitioner was to be imprisoned during the first twelve years of the sentence. *See id.* (Record Proper at 171-76).

Counsel appealed the denial of the motion to reconsider, asserting that the judge erred in failing to hold a hearing. *See Doc. 18,* Exh. A, Subparts J-K. The single-judge's summary disposition characterized the "motion to reconsider sentence" as a "motion for modification of sentence" under Rule 5-801(B), and further considered constitutional implications regarding the lack of a hearing. *See id.,* Subpart L. Counsel filed an opposition to the summary disposition, and specifically raised a federal procedural and substantive due process issue. *See id.,* Subpart M at 6.

While awaiting decision by an appellate panel, Petitioner moved *pro se* to amend the appeal to raise claims that: (1) concurrent instead of consecutive terms were called for under the plea agreement; (2) his "guilty plea was coerced [because] Jailers beat [him] while demanding that [he] plead guilty;" and (3) his "guilty plea was the result of ineffective assistance of counsel [who] was deficient in almost fifty [unspecified] ways." *Id.,* Subpart N. The New Mexico Court of Appeals expressly stated that it declined to address the *pro se* issues because Salazar was represented by counsel. Nevertheless, it appears they did:

> We point out that even if counsel had raised these issues in a motion to amend the docketing statement we would have denied the motion. Issue 1 lacks merit because there was no agreement as to sentencing. *See State v. Moore,* 109 N.M. 119, 128-29, 782 P.3d 91, 100-01 (Ct. App. 1989) (viability requirement). Issues 2 and 3 likewise are not viable because they are not matters of record and would need to be addressed in a habeas proceeding. *See State*

4

>           *v. Martin,* 101 N.M. 595, 603, 686 P.2d 937, 945 (1984) (court
>           may not consider matters not of record).

*Id.,* Subpart O.[4]

As to the merits of counsel's argument, the panel of the Court of Appeals relied on *State v. Sommer,* 118 N.M. 58, 59, 878 P.2d 1007, 1008 (Ct. App.), *cert. denied,* 117 N.M. 802 , 877 P.2d 1105 (1994), in characterizing the motion to reconsider as a Rule 5-801(B) "post-conviction proceeding." It then held that under *Sommer*, post-conviction proceedings are "not considered a 'critical stage' of trial that would constitutionally require heightened procedural safeguards, such as the presence of a defendant. *Id.*

The panel decision was issued on January 21, 2000, and the mandate issued on March 2, 2000. During that time, neither counsel nor Petitioner sought certiorari with the New Mexico Supreme Court. *See Salazar I* (Record Proper at 240-43). Petitioner's pursuit of relief in the state courts then ceased for the time being.

### B. Rule 5-802 Petition For State Habeas Relief

Much later that year, on December 6, 2000, another attorney appeared on behalf of Salazar and filed a state petition seeking habeas relief under Rule 5-802. *See Doc. 18,* Exh. A, Subpart P. Habeas counsel raised similar arguments to those Petitioner unsuccessfully pursued *pro se* in the prior proceedings. Counsel argued that the plea was coerced by trial counsel's promise of probation, that the guilty plea was involuntary due to medication Petitioner was taking, and that counsel was ineffective during the sentencing proceedings. *See id.* Habeas counsel also requested an evidentiary hearing. *See id.,* Subpart Q.

---

[4] District Judge Christina Armijo was part of the state panel at the time. Consequently, she transferred the instant action to District Judge Bruce Black. *See Doc. 3.*

After requiring a response from the State, the judge who presided over the habeas matter denied the petition "summarily" without an evidentiary hearing. However, he did explain his reasons for the denial in some detail. *See id.,* Subparts R-U. Counsel petitioned the New Mexico Supreme Court for certiorari, which was denied on September 7, 2001. *See id.,* Subpart W.

### *C. Initiation Of First Federal Habeas Petition*

Proceeding *pro se,* Petitioner pursued his first federal petition for habeas relief. Although it is unclear when the petition was mailed, it was filed on October 19, 2001. The court found the petition mixed, and gave Petitioner the option of proceeding after dropping the unexhausted claims or returning to state court to exhaust. Magistrate Judge Deaton's opinion, dated February 11, 2003, specifically advised Petitioner that if he opted to return to state court, he should "bear[] in mind that the one-year statute of limitation still applied to all of the claims in this petition, including those that have been exhausted." *Salazar I* (Doc. 32 at 4).

Despite requests for clarification, Petitioner's subsequent pleadings did not unambiguously state which option he was choosing. Finding that he did not unequivocally withdraw the unexhausted claims, District Judge William Johnson therefore entered a judgement dismissing the mixed petition without prejudice on March 7, 2003. *See id.* (Docs. 39, 40). Petitioner immediately filed a motion for reconsideration and notice of appeal, where he took the position that he wanted to withdraw the unexhausted claims. On April 28, 2003, Judge Johnson notified the Tenth Circuit that he would grant the motion and proceed to consider the exhausted claims, and therefore requested that it remand the case to district court. *See id.* (Docs. 46, 50).

Unbeknownst to Judge Johnson, however, Petitioner had changed his mind yet again and in fact had returned to state court to pursue the unexhausted claims. *See id.* (Docs. 49, 50).

6

Among other things,[5] Salazar had filed a state petition for habeas corpus relief raising the unexhausted claims as of March 27, 2003. *See Doc. 18,* Exh. KK.  On July 18, 2003, the very day the state judge summarily denied that petition after making detailed findings, Petitioner notified this court that he did not want to withdraw the unexhausted claims after all. *See id.,* Exh. LL.  According to the records submitted by Petitioner, he then filed a petition for certiorari with the New Mexico Supreme Court on August 7, 2003, which was denied on August 14, 2003.  *See Doc. 21*, Exh. C.  According to the records submitted by Respondents, he also filed a motion for "reconsideration" with the district court on September 3, 2003, which was summarily denied without explanation on September 17, 2003.  *See Doc. 18,* Exhs. MM-NN.

### D. *Second Federal Petition Filed Before The First Federal Habeas Action Concluded*

Petitioner filed the "Second Petition" seeking federal habeas corpus relief with this Court on August 29, 2003.  *Doc. 1.*  At that time, his first federal habeas action had not been fully resolved and was still pending.

In the first federal habeas proceeding, Judge Johnson had informed the Tenth Circuit that Salazar had changed his mind and wanted to pursue state habeas relief of the unexhausted claims.  Judge Johnson therefore told the Court of Appeals that he was withdrawing his previous request to remand the action.  *Salazar I* (Doc. 50).  Consequently, the Tenth Circuit proceeded with the appeal of the dismissal of the first federal petition, and disposed of the matter by denying a certificate of appealability in an order dated January 20, 2004.  *Id.* (Doc. 52).

---

[5] While his first federal habeas petition was pending, he also unsuccessfully pursued other avenues of relief in state court from August 8, 2002 through May 7, 2003.  *See Doc. 18,* Exhs. EE-JJ, OO-QQ.

### **III.  Analysis**

As discussed above, this case presents a multitude of procedural questions potentially affecting the timeliness of the Second Petition now before me.  Having thoroughly analyzed those issues, however, I have chosen to raise the statute of limitations issue *sua sponte*[6] because this second petition is plainly untimely,

#### *A.  AEDPA Statute Of Limitations*

Whether a petition is timely under the applicable one-year limitations period requires a determination of two things:  (1) when did the limitations period commence to run and (2) how many days was it tolled after it began running?

Pursuant to 28 U.S.C. § 2244(d)(1), the AEDPA one-year limitations period commences "from the latest" of four possible time periods, only one of which is implicated here – the date the state conviction became "final."  The statute defines the "date on which the judgment became final" as "the conclusion of direct review or the expiration of the time for seeking such review." *Id.,* § 2244(d)(1)(A).  The "expiration of the time for seeking" direct review is also judicially-defined as including the ninety-day period in which a defendant can petition the Supreme Court of the United States for certiorari, provided a direct appeal is taken.[7]  After a conviction becomes

---

[6] *See Kirk v. Mullin,* 42 Fed. Appx. 336, 337 (10th Cir. 2002) ("The magistrate judge reviewed the [§ 2254] petition and *sua sponte* raised the issue of timeliness of the filing of the petition.  It is clear that the magistrate judge had the power to raise the timeliness question *sua sponte.  Hardiman v. Reynolds,* 971 F.2d 500, 502-04 (10th Cir. 1992).").

[7] *E.g., United States v. Martin,* 357 F.3d 1198, 1200 (10th Cir. 2004) (§ 2255 petitions:  " If a prisoner does not file a petition for writ of certiorari with the United States Supreme Court after his direct appeal, the one-year limitation period begins to run when the time for filing a certiorari petition expires. A petition for a writ of certiorari must be filed within ninety days after denial of a timely petition for rehearing. *United States v. Hurst,* 322 F.3d 1256, 1259 (10th Cir. 2003)."); *Gamez v. Edmondson,* 61 Fed. Appx. 666, 667 (10th Cir. 2003) (§ 2254 petitions: "Gamez's conviction became final on July 1,

"final," the limitations period is statutorily tolled for the periods "during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2).

### B. Regardless of Whether The Motion To Reconsider Is Considered Part Of Direct Review Or Collateral Review, Salazar Had Less Than A Month Remaining On His One-Year Statute Of Limitations When The First Habeas Petition Was Filed

The inquiry here is complicated because Petitioner did not take a direct appeal from the either the original or amended judgment and sentence. Instead, he filed a motion for reconsideration of his sentence between the entry of those two orders. Ordinarily, I "must first consider whether [the motion for reconsideration] was part of the direct appeal process, or part of the state collateral review process." *York v. Galetka,* 314 F.3d 522, 526 (10th Cir. 2003). I have found virtually no binding authority on point.[8] Although I am inclined to believe that the motion

---

1998, ninety days after OCCA affirmed his conviction on direct appeal. *See Locke v. Saffle,* 237 F.3d 1269, 1273 (10th Cir. 2001) (holding that a conviction becomes final for habeas purposes when the ninety-day period for filing a petition for a writ of certiorari to the United States Supreme Court has expired)."); *see also York v. Galetka,* 314 F.3d 522, 526 (10th Cir. 2003) ("we must first consider whether York's motion to withdraw his guilty plea was part of the direct appeal process, or part of the state collateral review process. If York's motion was part of the direct appeal process, it bought him an additional ninety days of statutory tolling to seek certiorari in the United States Supreme Court. *Locke*[, 237 F.3d at 1271-72]. If this additional ninety-day statutory tolling period were applied, it would render York's third federal habeas petition timely. If York's motion was a collateral proceeding, however, the motion did not provide him with an additional tolling period for Supreme Court certiorari. *Id.* at 1271 n. 2."); *Pfeil v. Everett,* 9 Fed. Appx. 973, 977 (10th Cir. 2001) ("Mr. Pfeil's direct appeal and his judgment and sentence became final August 27, 1997 [30 days after entry of judgment and sentence on a guilty plea]. Because Mr. Pfeil did not file a direct appeal to the Wyoming Supreme Court, the ninety-day time period for appeals to the United States Supreme Court did not extend the date that his judgment and sentence became final.").

[8] The Supreme Court has indicated in dicta that the definition of "finality" in § 2241(d)(1)(A) evidences a Congressional intent to have the "finality . . . determined by reference to a uniform federal rule." *See Clay v. United States,* 537 U.S. 522, 530-31 (2003) ("Section 2244(d)(1) governs petitions by state prisoners. In that context, a bare reference to 'became final' might have suggested that finality assessments should be made by reference to state -law rules that may differ from the general federal rule and vary from State to State. . . . The words 'by the conclusion of direct review or the expiration of the

9

to reconsider should be characterized as part of the post-conviction process.⁹ Yet, in the context

---

time for seeking such review' make it clear that finality for the purpose of § 2244(d)(1)(A) is to be determined by reference to a uniform federal rule.").

   I believe, however, that a decision on where to pigeonhole Salazar's motion to reconsider sentence necessarily begins with reference to state law and to how the state courts characterized the motion  In *York,* for example, the Tenth Circuit held that a motion to set aside a guilty plea was part of state collateral review in Oklahoma, reasoning that:

> Typically, a motion to withdraw a guilty plea is considered part of the direct appeal process. *See, e.g., Hickman v. Spears,* 160 F.3d 1269, 1271 (10th Cir. 1998) (***noting Oklahoma state courts' characterization of motion to withdraw guilty plea as part of direct review process*** for procedural default purposes). Here, however, York did not bring his motion until nearly twelve years after he was convicted. By the time he brought the motion, he had already filed two state habeas proceedings and one federal habeas. Moreover, ***the state court itself characterized his motion as a post-conviction proceeding****. See* . . . ('Although the matter here under consideration is a motion to withdraw a guilty plea, it is considered as a post-judgment writ.').

*York,* 314 F.3d at 526-27 (emphasis added). *But compare Lambert v. Warden,* 81 Fed. Appx.1 (6th Cir. 2003) (recounting history of decisions that hold that Ohio procedure for reopening and permitting delayed appeal to raise issue of ineffectiveness of appellate counsel is part of direct review, notwithstanding Ohio state court interpretation that such proceedings are post-conviction proceedings).

  ⁹ I would find that for AEDPA limitations purposes, Salazar's motion to "reconsider" sentence is characterized as a "post-conviction" proceeding even though it was filed immediately following sentencing, and that Salazar's motion thus comes into play in the AEDPA analysis at the § 2254(d)(1)(B) tolling inquiry stage. Paralleling the analysis in the Tenth Circuit's decision in *York,* New Mexico Rule 5-801 motions are generally defined by the state court as being post-conviction proceedings, and the state decisions in Salazar's particular case characterized his motion as a Rule 5-801 proceeding. *See N.M. Rule 5-801(B)* (which falls under the heading "special proceeding" and was modeled after former version of FED. R. CRIM. P. 35 in effect prior to 1997, which falls under the heading "post-conviction procedures;" both rules  contain two different time frames in which the motion can be filed – either after sentencing, or after conclusion of an appeal upon direct review). Even though a Rule 5-801 motion can be filed after sentencing instead of waiting until the conclusion of direct review, New Mexico follows the principle that the substance of the motion, and not the asserted basis for jurisdiction, determines how a motion is characterized. As a result, both the state courts and the Tenth Circuit have characterized a Rule 5-801 motion as a "post-conviction" or "collateral" proceeding. This is so under state law, regardless of whether the movant had specifically attempted to invoke jurisdiction for the motion under 39-1-1. *See Truelove v. Smith,* 9 Fed. Appx. 798, (10th Cir. 2001) (Rule 5-801 motion filed after conclusion of direct appeal characterized as "post-conviction/collateral" and applied to § 2244(d)(2) analysis); *State v. Lucero,* 130 N.M. 676, 677, 30 P.3d 365, 366 (N.M. 2001) ("Rule 5-801 . . . like Rule 5-614, provides a method for post-conviction relief, specifically the modification of a sentence."); *State v. Neely,* 117 N.M. 707, 708-09,

10

of the particular facts of this case, I need not decide the characterization issue at this juncture.
Regardless of how the motion to reconsider is characterized, I reach the same result for AEDPA
limitations purposes.

### 1. *Calculation if Characterized as Post-Conviction Review*

If, for instance, the motion to reconsider is part of post-conviction review, Salazar's conviction became "final" for § 2244(d)(1) purposes thirty days after entry of the judgment on Tuesday, August 3, 1999 or, in other words, Thursday, September 2, 1999.[10] Since September 2,

---

876 P.2d 222, 223-24 (N.M. 1994) (motion to reduce sentence asserted § 39-1-1 as basis for jurisdiction; noting that State correctly cited decisions that construe § 39-1-1 to only apply to bench trials, New Mexico Supreme Court declined to address whether those decisions are correct because it construed the motion "as being one under . . . Rule 5-801(b) . . . to reconsider and reduce her sentence regardless of her motion's assertion of the basis for jurisdiction"); *Sommer,* 118 N.M. at 59, 878 P.2d at 1008 (rule governing defendant right to be present at certain stages "says nothing about post-conviction hearings, such as the one in this case [under Rule 5-801(B)]"); *State v. Peppers,* 110 N.M. 393, 796 P.2d 614 (N.M. App.) (§ 39-1-1 "has been superseded in part by Rules 5-614 and -801, which provide the specific provisions governing motions for new trial and motions for reconsideration of sentence"), *cert. denied,* 110 N.M. 260 , 794 P.2d 734 (1990).

Also, the rule that extends time to appeal does not include 5-801 motions. Under Rule 12-201(D), a "post-trial" motion brought under § 39-1-1 extends the time in which to take a direct appeal, as do other specified motions. A motion to "modify sentence" under Rule 5-801, on the other hand, is not listed among them. *See N.M. Rule 12-201(D)* (specifying that motions under civil rules for judgment as matter of law/alternative new jury trials, for request to court to enter findings and conclusions in nonjury trials, or for new trial in jury or nonjury trials and under criminal rule for new trial based on grounds other than newly discovered evidence, "the full time prescribed in this rule for the filing of the notice of appeal shall commence to run and be computed from either the entry of an order expressly disposing of the motion or the date of any automatic denial of the motion under that statute or any of these rules, whichever occurs first.").

Furthermore, Salazar's plea waived a direct appeal of the conviction or sentence as it was imposed, further suggesting that counsel's motion was intended as a post-conviction proceeding. *See Doc. 18,* Exh. A, Subpart G, at ¶ 5 ("Unless the plea is rejected or withdrawn, the Defendant hereby gives up any and all motions, defenses or objections which he has made or raised or could assert hereafter to the Court's entry of judgment and imposition of a sentence upon him consistent with this Agreement. The Defendant also waives the right to appeal the conviction that results form the acceptance of this Agreement.").

[10]   *See N.M. Rule 12-201(A)(2)* (notice of appeal in any case other than decisions suppressing or excluding evidence or requiring return of seized property must be filed within thirty days of the judgment or

11

2000 fell on a Saturday and the following Monday was Labor Day, his first federal petition would have been due by Tuesday, September 5, 2000, absent tolling.[11] That deadline was simultaneously tolled under § 2244(d)(2), however, because the properly filed post-conviction proceeding was pending on the date that the AEDPA statute began to run. Thus, the limitations period was tolled for 161 days, from the date the conviction became final on September 2, 1999 to February 10, 2000, twenty days after the Court of Appeals issued its decision.[12] The statute of limitations then ran unabated from February 11, 2000 to December 6, 2000, the date when Salazar's counsel filed a state habeas petition. Those proceedings were pending for 275 days, from December 6, 2000

---

order appealed from); *Pfeil,* 9 Fed. Appx. at 975 (conviction from entry of judgment and sentence on guilty plea was thirty days after judgment entered where no direct appeal filed).

[11] The "anniversary date," which is as the same date of the following year, is used as opposed to the "calendar date," defined as one day before the same date of the following year. Thus, if a conviction becomes final on August 1, 1999, a petition that is filed on August 1, 2000 or before is timely under the one-year limitations period. *See, e.g., United States v. Hurst,* 322 F.3d 1256, 1260 (10th Cir. 2003); *Malone v. Oklahoma,* ___ Fed. Appx. ___, 2004 WL 1249850 (10th Cir. 6/8/04) (Hurst holds "that one-year limitation period in AEDPA should be calculated using anniversary date method even when intervening period includes leap year").

[12] Under *Gibson v. Klinger,* 232 F.3d 799, 804 (10th Cir. 2000), "regardless of whether a petitioner actually appeals a denial of a post-conviction application, the limitations period is tolled during the period in which the petitioner could have sought an appeal under state law." Under New Mexico law, Salazar had twenty days to petition the New Mexico Supreme Court for certiorari. *See* N.M.STAT.ANN. § 34-5-14(B).

Under *Gibson,* the date that the Court of Appeals filed its decision plus the time in which to petition, as opposed to when the Court of Appeals filed its mandate, is the applicable date from which to calculate. Other courts have been faced with the issue of whether the later-issued mandate controls have rejected the argument. *See White v. Klitzkie,* 281 F.3d 920, 932-24 & n.4 (9th Cir. 2002) (rejecting contention that entry of mandate signaled conclusion of review absent a specific state rule that defines another time frame for considering a decision final); *see also Hutchinson v. Farwell,* 86 Fed. Appx. 292 (9th Cir. 2004) (rejecting contention that state court decision on post-conviction review became final when district court received Nevada Supreme Court's order of remittitur); *Lewis v. Maine,* 254 F. Supp. 2d 159, 162-63 (D. Me. 2003) (noting that in situations where tolling applies to a period of further review, date of entry of decision on docket controls); N.M. Rule 12-402(C) ("Mandate from the court of appeals shall not issue until the time has elapsed for seeking certiorari in the supreme court.").

until September 7, 2001, when the New Mexico Supreme Court denied certiorari.

Thus, the first federal petition would have been due September 5, 2000 absent tolling. Adding the two instances in which the limitations period was tolled, or 436 days, the first federal petition thus was due by Thursday, November 15, 2001. Though it is not clear when Salazar mailed his first federal petition, or the circumstances under which he did so for the federal "prison mailbox rule" purposes, the first federal petition was filed on October 19, 2001. Using the filing date as my benchmark, Salazar thus had 27 days left on his one-year limitations period when he filed his first federal habeas petition.

*2. Calculation if characterized as part of Direct Appeal*

Alternatively, if the motion to reconsider sentence was considered as part of the direct appeal, Salazar had 28 days left on his one-year limitations period when he filed his first federal habeas petition. That is, because the Rule 5-801 motion was not pursued beyond the Court of Appeal level, his conviction would have become "final" under § 2244(d)(1) on Thursday, February 10, 2000.[13] His federal petition would have been due Monday, February 12, 2001, since February 10, 2001 fell on a Saturday. Adding the 275 days during which his state habeas petition was pending, Salazar's first federal petition would have been due Wednesday, November 14, 2001. Therefore, the statute of limitations did not bar the first federal petition.

### C.  The "Duncan Problem" And Equitable Tolling

In *Duncan v. Walker,* 533 U.S. 167 (2001), the Supreme Court held that a ***federal*** habeas

---

[13]   *See Pfeil,* 9 Fed. Appx. at 977 ("Because Mr. Pfeil did not file a direct appeal to the Wyoming Supreme Court, the ninety-day time period for appeals to the United States Supreme Court did not extend the date that his judgment and sentence became final.  *See* United States Supreme Court Rule 13 (stating ninety-day period applies only to decisions from the state court of last resort.").

petition does not qualify as "other collateral review" for statutory tolling under § 2244(d)(2). By the time Salazar filed his first federal petition, the Supreme Court's decision in *Duncan* was approximately four months old. *See York,* 314 F.3d at 527 (noting that *Duncan* was decided on June 18, 2001). Accordingly, the statute of limitations continued to run after Salazar filed his first federal petition. Even by the time Magistrate Judge Deaton filed the February 11, 2003 opinion giving Salazar the option of exhausting or dropping the unexhausted claims set forth in the first federal petition, the AEDPA statute had been expired for over a year.

Thus, this Second Petition is barred as untimely filed. The only avenue available to excuse noncompliance with the AEDPA statute of limitations lies if Petitioner establishes grounds for equitable tolling or actual innocence. *E.g., Miller v. Marr,* 141 F.3d 976, 978 (10th Cir.), *cert. denied,* 525 U.S. 891 (1998). Petitioner has not yet had the opportunity to raise any additional grounds for equitable tolling. To assure that Petitioner has a meaningful opportunity to do so, I will give him more than the usual time within which to file his objections.

Wherefore,

**IT IS HEREBY RECOMMENDED** that this second § 2254 petition be dismissed as time-barred.

**IT IS FURTHER ORDERED** that Petitioner will be allowed **thirty (30) days** of receipt of these Proposed Findings and Recommended Disposition in which to file his objections pursuant to 28 U.S.C. § 636(b)(1) and set forth his grounds for equitable tolling, if any. **The written objections must be filed with the Clerk of the District Court. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES MAGISTRATE JUDGE